# HUNTER *v.* CITY OF PITTSBURGH.

## ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 264.　Argued October 25, 28, 1907.—Decided November 18, 1907.

The policy, wisdom, justice and fairness of a state statute, and its conformity to the state constitution are wholly for the legislature and the courts of the State to determine, and with those matters this court has nothing to do.

The Fifth Amendment to the Federal Constitution is not restrictive of state, but only of national, action.

There is no contract, within the meaning of the contract clause of the Federal Constitution, between a municipality and its citizens and taxpayers that the latter shall be taxed only for the uses of that corporation and not for the uses of any like corporation with which it may be consolidated.

Municipal corporations are political subdivisions of the State, created by it and at all times wholly under its legislative control; their charters, and the laws conferring powers on them, do not constitute contracts with the State within the contract clause of the Federal Constitution; nor are a municipality and its citizens or taxpayers deprived of its or their property without due process of law, nor is such property taken without compensation, by reason of any legislative action of the State in regard to the property held by such municipality for governmental purposes, or as to the territorial area of such municipality, or the consolidation thereof with another city, or the repeal or alteration of its charter.

The act of February 7, 1906 of Pennsylvania providing for the union of contiguous municipalities, under which the cities of Pittsburgh and Allegheny were consolidated, is not unconstitutional as depriving the City of Allegheny or the citizens and taxpayers thereof of their property without due process of law, or because it takes property without compensation or because it impairs any contract between the City of Allegheny and the State or the City of Allegheny and its citizens and taxpayers.

A LAW of the State of Pennsylvania (February 7, 1906), provides for the union of cities, which are contiguous or in close proximity, by the annexation of the lesser to the larger. The parts of that law material to this decision follow, Pennsylvania Laws, 1906, p. 7:

"SEC. 1. Be it enacted, etc., That wherever in this Common-

wealth, now or hereafter, two cities shall be contiguous or in close proximity to each other, the two, with any intervening land other than boroughs, may be united and become one by annexing and consolidating the lesser city, and the intervening land other than boroughs, if any, with the greater city, and thus making one consolidated city, if at an election, to be held as hereinafter provided, there shall be a majority of all the votes cast in favor of such union.

"SEC. 2. The councils of either of said cities may by ordinance direct that a petition be filed in the court of quarter sessions of the county in which said cities are situate, or two per centum of the registered voters of either of said cities may present their petition to said court, praying that the two cities, and any intervening land other than boroughs, shall be united and become one city. Thereupon the said petition shall be filed; and the court shall fix a time for the hearing thereof, not more than twenty days thereafter, and direct that notice be given to the mayor or chief executive officer of each of the said cities, and the clerk of the councils of each of said cities, and by publication in one or more newspapers published in either of said cities, and such notice as the court may deem proper, including notice to one or more of the officers of whatever may be the municipal subdivision of the State in which any intervening land other than boroughs may lie.

"SEC. 4. Any person interested may file exceptions to said petition prior to the day fixed for hearing. At such hearing any person in interest shall be heard; but if the court shall find that the petition and proceedings are regular and in conformity with this act, it shall order an election to be held in such cities, to vote for or against the proposed consolidation, at which all the legal voters of either of said cities, and of the said intervening land, if any, shall be qualified to vote.

\*     \*     \*     \*     \*     \*     \*     \*

"SEC. 7. If it shall appear by the vote, when computed and certified as [provided in section 6], that a majority of all the lawful voters of the two cities and the intervening land, voting

upon such question, have voted in favor of the annexation or consolidation, the said court of quarter sessions shall enter a decree annexing and consolidating the lesser city, and any intervening land other than boroughs, with the greater city, so that they form but one city, and in the name of the greater or larger city;

\*        \*        \*        \*        \*        \*        \*        \*

"SEC. 8. Each of the constituent cities, and the intervening land, if any, so consolidated, shall pay its own floating and bonded indebtedness and liabilities of every kind, and the interest thereon, as the same existed at the time of annexation; and the councils of the consolidated city shall levy, respectively, on the properties in each of the said cities and intervening land so consolidated, and as they existed at the time of annexation, a tax sufficient to provide funds for each to pay its own floating and bonded indebtedness and liabilities and interest, as the same may accrue. The court of quarter sessions is given jurisdiction to ascertain what the floating and bonded indebtedness, and liabilities, and properties, and assets, of each of the said cities and the said intervening land may be; due notice being given and an opportunity to be heard being allowed, to all parties in interest.

"SEC. 9. All the citizens of each of the united cities and of the intervening land shall be entitled to, and shall enjoy and exercise, full rights of citizenship in the said enlarged and consolidated city. All the rights of creditors and all liens, and all the rights of the constituent cities and the government of the intervening land, to enforce the payment of moneys due either, or of contract liabilities, or of other claims or rights of property, existing in either city or in the government of the intervening land at the time of annexation, shall be preserved unimpaired to each; and each of the said cities and the government of the intervening land, for the purpose of enforcing its rights and claims in the premises, and also of having prior rights and claims enforced against it, shall be deemed in law to continue in existence.

"Except as herein otherwise provided, all the property, real, personal and mixed, and rights and privileges of every kind, vested in or belonging to either of said cities or to the intervening land prior to and at the time of the annexation, shall be vested in and owned by the consolidated or united city;

   \*      \*      \*      \*      \*      \*      \*      \*

"All moneys accruing, from time to time, from delinquent taxes prior to the annexation, and all assessments against private property for public improvements for which the contractors shall have been paid, shall be applied to the indebtedness of the city to which the same shall belong. In case of annexation, the court may appoint commissioners to ascertain the floating and bonded indebtedness of each of the said municipal subdivisions, at the time of annexation, including the share of the municipal indebtedness for which any intervening land may be liable, and also an account of all property, of every kind, owned or claimed by the cities or the share of the intervening land to any property owned by the municipal subdivision of the State of which it is a part, prior to and at the time of annexation. The court may also order an account to be taken by the said commissioners of all moneys on hand or receivable, applicable to the payment of the floating or bonded indebtedness of the respective municipalities or of the intervening land, at the date of annexation. Such money shall be, respectively, applied in payment of the floating or bonded indebtedness of the respective municipalities or of the intervening land;

   \*      \*      \*      \*      \*      \*      \*      \*

"After the commissioners have made report, the court shall, by its decree, fix the said indebtedness and liabilities, and also the properties and assets, of all kinds, at the time of the annexation belonging to each territory united in the consolidation."

The City of Pittsburgh under the provision of this act filed in the Court of Quarter Sessions of Allegheny County a petition asking for the union of the City of Allegheny with the City of

Pittsburgh. The plaintiffs in error (except the City of Allegheny) seasonably filed exceptions to the petition under section 4 of the act. The parts of the exceptions material here are as follows:

"1st. That they are residents and citizens, voters, taxpayers and owners of real estate and personal property, within the City of Allegheny, County of Allegheny and State of Pennsylvania.

"4th. That the population of the City of Pittsburgh by the census of 1900 was 321,616 and that it has now a population of at least 350,000. That there were polled at the last mayoralty election in the said city, on February 20th, 1906, about 62,000 votes in round numbers.

"That the population of the City of Allegheny by the census of 1900 was 129,896, and that it is probably about 150,000 at the present time; that there were polled at the last mayoralty election in the said city, on February 20th, 1906, about 24,000 votes, in round numbers.

"6th. The City of Allegheny has improved its streets, established its own system of electric lighting; and has established a satisfactory water supply. The City of Pittsburgh is largely in debt; has established large and extensive parks in the eastern part of the city; built expensive and costly boulevards; extensive and costly reservoirs for the supply of water; and is contemplating still greater expenditures of money in the cutting down and grading of the elevation of Fifth Avenue, known as the hump; and the construction of an extensive filtration plant; and a large expenditure of money in the purchase of the Monongahela Water Company plant; a plant owned by a private corporation; and the further expensive construction of an electric light plant to be owned by the City of Pittsburgh, the said city owning at the present time no light plant, it being supplied with light from a private corporation; and the further expenditure of various sums of money for the acquirement of advantages and property which the citizens of Allegheny now practically own and enjoy but which the

citizens of Pittsburgh do not, and to acquire which would largely increase the indebtedness of the City of Pittsburgh, and if the City of Allegheny should be annexed to the City of Pittsburgh, the taxpayers of Allegheny, including your respondents, will, in addition to the payment of the taxes necessary to pay and liquidate their own indebtedness, have to bear and pay their proportion of the new indebtedness that must necessarily be created to acquire the facilities, properties and improvements, herein stated, in Pittsburgh; all of which would be of no benefit to the citizens and taxpayers of Allegheny, including your respondents who now own and possess these advantages and privileges; and which will largely and unnecessarily increase the taxes of your respondents, as well as the taxes of the other citizens of Allegheny, without any material benefit to them whatever.

"12th. The Act of Assembly under which this petition is filed for the annexation of the City of Allegheny to the City of Pittsburgh is in conflict with Article I, section 9, paragraph 10, of the Constitution of the United States, in that it impairs the obligations of the contract existing between the City of Allegheny and your respondents, by which they are to be taxed only for the government of the City of Allegheny, and for improvements, repairs and expenditures incidental to the government of the said City of Allegheny, and the attempt to subject them to the increased taxes and burdens of an additional or enlarged city government, by legislation, is in violation of said Article I, section 9, paragraph 10, of the Constitution of the United States, and therefore is unconstitutional

"13th. The Act of General Assembly under which this petition is filed, is in conflict with Article V of the amendments of the Constitution of the United States, because if the City of Allegheny shall be annexed in pursuance of the petition filed in this case, it will be depriving your respondents of their property without due process of law, and is therefore unconstitutional. Said annexation of the City of Allegheny to the City of Pittsburgh will add additional taxes to the property

of your respondents, and create additional burdens without compensation, and will depreciate the value of the property of your respondents, and they, therefore, will be deprived of their property, in violation of said Article V of the amendments to the Constitution of the United States.

"14th. The Act of Assembly under which this petition is filed is in conflict with Article XIV of the amendments to the Constitution of the United States, because the said annexation of the City of Allegheny to the City of Pittsburgh deprives your respondents of their property without due process of law. The additional taxes and burdens, which the property of your respondents will have to bear in case the annexation takes place will cause a large depreciation in the value of the property of your respondents.

"22nd. The Act of the General Assembly under which these proceedings are had is in violation of the law of the land, it being unfair, unjust and unequal; and is in conflict with the rights and privileges reserved by the people to themselves, in that it permits the qualified electors of the larger city to overpower or outnumber those of the lesser city, and to annex the lesser city without the vote or consent of a majority of the qualified electors of the lesser city."

The City of Pittsburgh filed an answer to the exceptions, admitting some of the allegations contained therein and denying others. As nothing turns here upon the answer it need not be set forth. Thereupon there was a hearing in the case. No evidence on the issues of fact raised by the exceptions and the answer thereto was introduced, and no decision upon those issues was made. The court "dismissed" the exceptions, and ordered an election to be held as prayed for in the petition. At the election a majority of all the voters of the two cities voted in favor of the consolidation. It is agreed that the majority of the voters of the City of Allegheny voted against the consolidation, but that majority was overcome by a larger majority of the voters of the City of Pittsburgh in favor of the consolidation. The result of the election duly appearing to the

Court of Quarter Sessions, that court thereupon decreed that the two cities should be consolidated. The case was then taken by writ of error to the Superior Court of Pennsylvania, and the error assigned was the dismissal of the exceptions. In that court the City of Allegheny on its petition was permitted "to intervene and become one of the appellants in said proceedings." The Superior Court overruled the assignments of error and affirmed the decree. Thereupon the same assignments of error were made in the Supreme Court of Pennsylvania, where the case was taken by writ of error. That court dismissed the assignments of error, affirmed the decree and refused a motion for rehearing. A writ of error was then allowed by a justice of this court. The assignments in this court are as follows:

"First. The Supreme Court of the State of Pennsylvania erred in dismissing the fourth assignment of error of the plaintiffs in error, which is as follows:

"'The Act of the General Assembly under which these proceedings are had, is in violation of the law of the land, it being unfair, unjust and unequal; and is in conflict with the rights and privileges reserved by the people to themselves, in that it permits the qualified electors of the larger city to overpower and outnumber those of the lesser city, and to annex the lesser city without the vote or consent of a majority of the qualified electors of the lesser city.'

"Second. The Supreme Court of the State of Pennsylvania erred in dismissing the fifth assignment of error of the plaintiffs in error, which is as follows:

"'The Act of Assembly under which this petition is filed for annexing of the City of Allegheny to the City of Pittsburgh is in conflict with Article I, section 9, paragraph 10, of the Constitution of the United States, in that it impairs the obligations of the contract existing between the City of Allegheny and your respondents, by which they are to be taxed only for the government of the City of Allegheny and for improvements, repairs and expenditures incidental to the government of said

City of Allegheny, and the attempt to subject them to the increased taxes and burdens of an additional or enlarged city government, by legislation, is in violation of Article I, section 9, paragraph 10, of the Constitution of the United States, and therefore is unconstitutional.'

"Third. The Supreme Court of the State of Pennsylvania erred in dismissing the sixth assignment of error of the plaintiffs in error, which is as follows:

" 'The Act of General Assembly under which this petition is filed is in conflict with Article V of the amendments of the Constitution of the United States, because if the City of Allegheny shall be annexed in pursuance of the petition filed in this case it will be depriving your respondents of their property without due process of law, and is therefore unconstitutional. Said annexation of the City of Allegheny to the City of Pittsburgh will add additional taxes to the property of your respondents, and create additional burdens without compensation, and will depreciate the sale of the property, in violation of said Article V of the amendments to the Constitution of the United States, and they, therefore, will be deprived of their property.'

"Fourth. The Supreme Court of the State of Pennsylvania erred in dismissing the seventh assignment of error of the plaintiffs in error, which is as follows:

" 'The Act of Assembly under which this petition is filed is in conflict with Article XIV of the amendments to the Constitution of the United States, because the said annexation of the City of Allegheny to the City of Pittsburgh deprives your respondents of their property without due process of law. The additional taxes and burdens which the property of your respondents will have to bear in case the annexation takes place will cause a large depreciation in value of the property of your respondents.'

"Fifth. The Supreme Court of the State of Pennsylvania erred in not holding that the Act of the General Assembly of Pennsylvania, approved February 7, A. D. 1906, entitled 'An

act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to and from each,' was special or local legislation, and in conflict with Article 3, section 7, subdivision 2, of the constitution of the State of Pennsylvania, which constitutional provision provides that 'The General Assembly shall not pass any local or special law, regulating the affairs of counties, cities, townships, wards, boroughs, or school districts,' and the said Act of Assembly being in conflict with said provision of the constitution of the State of Pennsylvania, is not due process of law, and therefore is in conflict with the Fourteenth Amendment to the Constitution of the United States.

"Sixth. The Supreme Court of the State of Pennsylvania erred in not holding that the said Act of Assembly, entitled as aforesaid, was passed at an extraordinary or special session of the legislature, convened by the Governor of Pennsylvania under Article 4, section 12, of the constitution of Pennsylvania, which provides that the Governor may, on extraordinary occasions, convene the General Assembly; and that the subject of the said legislation or Act of Assembly, aforesaid, was not designated in the proclamation of the Governor calling such a session, or in the paper or proclamation issued by him dated January 9, 1906, and is therefore in conflict with Article 3, section 25, of the constitution of Pennsylvania, which provides that 'When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session,' and that the said Act of Assembly is, by reason thereof, not due process of law, and is in conflict with the Fourteenth Amendment to the Constitution of the United States.

"Seventh. The Supreme Court of Pennsylvania erred in

dismissing the exceptions filed by the plaintiffs in error, thereby confirming the judgment of the court below.

"Eighth. The Supreme Court of Pennsylvania erred in not entering judgment in favor of the plaintiffs in error and not reversing the judgment of the court below."

*Mr. John G. Johnson* and *Mr. William A. Stone* for plaintiffs in error:

The law in question herein is not just, fair or reasonable. The courts and not the legislature must determine whether the law is reasonable, and if it be unreasonable it is not due process of law. *Smyth* v. *Ames,* 169 U. S. 466; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79.

The scheme, or trick, of the law is apparent. As it was expected by the framers of the law that Allegheny would vote against consolidation, they determined to neutralize the vote of Allegheny by the larger vote of Pittsburgh. The law gave them a vote, but by a scheme which destroyed it. Legislation which thus destroys the vote it allows is not fair, just and reasonable. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Capen* v. *Foster,* 12 Pick. 488; *People* v. *Solomon,* 51 Ills. Sup. Ct. Rep. 37.

The law in controversy is one providing for the consolidation of two cities, or the annexation of the lesser to the larger city, by the majority vote of the two cities. The larger city was almost unanimously in favor of annexing the smaller. The smaller city was almost as strongly opposed to such annexation. Under the color of giving the citizens affected a vote to determine the question a scheme was adopted and put into the law, which restrained the right to determine such by vote.

It is not usual to consolidate cities in this way, and such has not been the practice in Pennsylvania. The method provided by this statute is not the usual way in that State and is not due process of law.

We find in Pennsylvania no precedent for this law. On the contrary, whenever consolidation has been effected by a

vote of the people, each municipality has been given a separate vote, which separate vote if against consolidation, determined that the municipality so voting against consolidation should not be included in the scheme.

The question for this court here to determine is, not whether Pittsburgh and Allegheny ought to be consolidated; not whether the legislature has the power to consolidate them by an Act of Assembly; but whether the method adopted in the act in controversy is reasonable, usual, customary and just.

The act in question is not "due process of law," and, therefore, is in conflict with the Fourteenth Amendment, because it limits the power and jurisdiction of the courts simply to an inquiry whether the petition and the proceedings filed are regular and in conformity therewith.

The record also presents a case in which the City of Allegheny, being possessed of valuable property, which by its charter was vested in it for the use and benefit of its citizens forever, has been stripped of its property for the benefit of the City of Pittsburgh.

The fact that the City of Pittsburgh presented the petition for consolidation, and that such petition was opposed by the City of Allegheny from the outset, is inconsistent with the idea, appearing so often in the brief of defendant in error, to the effect that the latter city is the one benefited by the consolidation.

A municipal corporation may have rights of property vested in it for the benefit of its citizens of which it cannot be deprived without due process of law, without violating the Federal protection accorded to contracts.

The water and electric plants as well as other property which belongs to the City of Allegheny were held by it under the protection of the Federal Constitution. *New Orleans* v. *Water Works Co.*, 142 U. S. 91; *Powers* v. *Detroit &c. R. R. Co.*, 201 U. S. 543; *Graham* v. *Folsom*, 200 U. S. 248.

In the present case the charter is not amended, nor changed, nor revoked, but one city, without its consent, with all of its

property, is legislated into the greater city.; While the legislature might amend, and perhaps revoke the charter of Allegheny, it could not pass the property of. Allegheny over to Pittsburgh by law, as was attempted. *New Orleans* v. *Water Works Co.*, 142 U. S. 91; *Broome* v. *Furner*, 176 Massachusetts, 9; *Powers* v. *Detroit &c. R. R. Co.*, 201 U. S. 543

·*Mr. W. B. Rodgers* and *Mr. D. T. Watson*, with whom *Mr. J. Rodgers McCreery* and *Mr. John M. Freeman* were on the brief, for defendant in error:

A city is nothing but a municipal corporation of the State, made by the State for the purpose of administering and governing a certain locality. There is no contract relation between the city and the State; as the State made, she can destroy or take away, and the law of Pennsylvania, and indeed the decisions of this court show, that the State may add to a city, may take away from a city, may merge a city or a borough or two cities, or two townships, or two boroughs, and this without any intervention of the voters and even against the wishes of the majority of the voters within the territorial limits. As the State has the absolute power to do this, to merge or take away. a charter, or to add additional territory, or take it away; it may select, at its own option, the plan under which it will be carried out, and the voters of the district have no voice whatever in the determination of that question, unless the State sees fit to delegate the same to them.

If the State has the absolute power to annex one city to another without consulting the people of either city, how is it possible to say that it cannot do so when a majority of all the people in the proposed greater city are in favor of it, simply because a majority of such people in either city oppose it? That majority could not prevent the State from acting.

How the question of merger between two cities shall be left to be determined by a majority of the voters of the lesser city is certainly something new in municipal law, and is wholly unsupported by any decided case that we have any knowledge of.

How, and under what circumstances a merger of two or more municipalities shall take place is for the State and the State alone to determine, and the question is purely legislative and not judicial, and before any claim can be made that the legislation is not due process of law, the facts must be shown to demonstrate that it deprives someone of life, liberty or property. *State of Ohio* v. *Cincinnati*, 52 Ohio St. 419; Cooley on Constitutional Limitations (6th Ed.), 228; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514, 531.

The creation and consolidation of municipal corporations, the determination of their boundaries and the administration of their internal affairs, are matters peculiarly within the jurisdiction of the State. These are questions upon which the determination of the state authorities will be accepted by the Federal courts as authoritative and controlling. *Forsyth* v. *Hammond*, 166 U. S. 506, 518; *Williams* v. *Eggleston*, 170 U. S. 304; *Kelly* v. *Pittsburgh*, 104 U. S. 78, 81; *Wilson* v. *North Carolina*, 169 U. S. 586, 593; *Claiborne County* v. *Brooks*, 111 U. S. 400, 410; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *Laramie County* v. *Albany Co.*, 92 U. S. 307; *Covington* v. *Kentucky*, 173 U. S. 231.

Mr. Justice Moody, after making the foregoing statement of the case, delivered the opinion of the court.

The plaintiffs in error seek a reversal of the judgment of the Supreme Court of Pennsylvania, which affirmed a decree of a lower court, directing the consolidation of the cities of Pittsburgh and Allegheny. This decree was entered by authority of an act of the General Assembly of that State, after proceedings taken in conformity with its requirements. The act authorized the consolidation of two cities, situated with reference to each other as Pittsburgh and Allegheny are, if upon an election the majority of the votes cast in the territory comprised within the limits of both cities favor the consolidation, even though, as happened in this instance, a majority

of the votes cast in one of the cities oppose it. The procedure prescribed by the act is that after a petition filed by one of the cities in the Court of Quarter Sessions, and a hearing upon that petition, that court, if the petition and proceedings are found to be regular and in conformity with the act, shall order an election. If the election shows a majority of the votes cast to be in favor of the consolidation, the court "shall enter a decree annexing and consolidating the lesser city . . . with the greater city." The act provides, in considerable detail, for the effect of the consolidation upon the debts, obligations, claims and property of the constituent cities; grants rights of citizenship to the citizens of those cities in the consolidated city; enacts that "except as herein otherwise provided, all the property . . . and rights and privileges . . . vested in or belonging to either of said cities . . . prior to or at the time of the annexation, shall be vested in and owned by the consolidated or united city," and establishes the form of government of the new city. This procedure was followed by the filing of a petition by the City of Pittsburgh; by an election in which the majority of all the votes cast were in the affirmative, although the majority of all the votes cast by the voters of Allegheny were in the negative, and by a decree of the court uniting the two cities.

Prior to the hearing upon the petition the plaintiffs in error, who were citizens, voters, owners of property and taxpayers in Allegheny, filed twenty-two exceptions to the petition. These exceptions were disposed of adversely to the exceptants by the Court of Quarter Sessions, and the action of that court was successively affirmed by the Superior and Supreme courts of the State. The case is here upon writ of error and the assignment of errors alleges that eight errors were committed by the Supreme Court of the State. This assignment of errors is founded upon the dispositions by the state courts of the questions duly raised by the filing of the exceptions under the provisions of the Act of the Assembly.

The defendants in error moved to dismiss the case because

no Federal question was raised in the court below or by the assignments of error, or, if any Federal question was raised, because it was frivolous. This motion must be overruled. The plaintiffs in error claimed that the Act of Assembly was in violation of the Constitution of the United States, and specially set up and claimed in the court below rights under several sections of that Constitution, and all their claims were denied by that court. These rights were claimed in the clearest possible words, and the sections of the Constitution relied upon were specifically named. The questions raised by the denial of these claims are not so unsubstantial and devoid of all color of merit that we are warranted in dismissing the case without consideration of their merits.

Some part of the assignments of error and of the arguments in support of them may be quickly disposed of by the application of well-settled principles. We have nothing to do with the policy, wisdom, justice or fairness of the act under consideration; those questions are for the consideration of those to whom the State has entrusted its legislative power, and their determination of them is not subject to review or criticism by this court. We have nothing to do with the interpretation of the constitution of the State and the conformity of the enactment of the Assembly to that constitution; those questions are for the consideration of the courts of the State, and their decision of them is final. The Fifth Amendment to the Constitution of the United States is not restrictive of state, but only of national, action.

After thus eliminating all questions with which we have no lawful concern, there remain two questions which are within our jurisdiction. There were two claims of rights under the Constitution of the United States which were clearly made in the court below and as clearly denied. They appear in the second and fourth assignments of error. Briefly stated, the assertion in the second assignment of error is that the Act of Assembly impairs the obligation of a contract existing between the City of Allegheny and the plaintiffs in error, that the latter

are to be taxed only for the governmental purposes of that city, and that the legislative attempt to subject them to the taxes of the enlarged city violates Article I, section 9, paragraph 10, of the Constitution of the United States. This assignment does not rest upon the theory that the charter of the city is a contract with the State, a proposition frequently denied by this and other courts. It rests upon the novel proposition that there is a contract between the citizens and taxpayers of a municipal corporation and the corporation itself, that the citizens and taxpayers shall be taxed only for the uses of that corporation, and shall not be taxed for the uses of any like corporation with which it may be consolidated. It is not said that the City of Allegheny expressly made any such extraordinary contract, but only that the contract arises out of the relation of the parties to each other. It is difficult to deal with a proposition of this kind except by saying that it is not true. No authority or reason in support of it has been offered to us, and it is utterly inconsistent with the nature of municipal corporations, the purposes for which they are created, and the relation they bear to those who dwell and own property within their limits. This assignment of error is overruled.

Briefly stated, the assertion in the fourth assignment of error is that the Act of Assembly deprives the plaintiffs in error of their property without due process of law, by subjecting it to the burden of the additional taxation which would result from the consolidation. The manner in which the right of due process of law has been violated, as set forth in the first assignment of error and insisted upon in argument, is that the method of voting on the consolidation prescribed in the act has permitted the voters of the larger city to overpower the voters of the smaller city, and compel the union without their consent and against their protest. The precise question thus presented has not been determined by this court. It is important, and, as we have said, not so devoid of merit as to be denied consideration, although its solution by principles long settled and constantly acted upon is not difficult. This court

has many times had occasion to consider and decide the nature
of municipal corporations, their rights and duties, and the
rights of their citizens and creditors. *Maryland* v. *Balt. &
Ohio Railroad*, 3 How. 534, 550; *East Hartford* v. *Hartford
Bridge Company*, 10 How. 511, 533, 534, 536; *United States* v.
*Railroad Company*, 17 Wall. 322, 329; *Laramie County* v.
*Albany County*, 92 U. S. 307, 308, 310–312; *Commissioners* v.
*Lucas*, 93 U. S. 108, 114; *New Orleans* v. *Clark*, 95 U. S. 644,
654; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514, 524, 525, 531,
532; *Meriwether* v. *Garrett*, 102 U. S. 472, 511; *Kelly* v. *Pitts-
burgh*, 104 U. S. 78, 80; *Forsyth* v. *Hammond*, 166 U. S. 506, 518;
*Williams* v. *Eggleston*, 170 U. S. 304, 310; *Covington* v. *Ken-
tucky*, 173 U. S. 231, 241; *Worcester* v. *Worcester Street Railway
Company*, 196 U. S. 539, 549; *Kies* v. *Lowrey*, 199 U. S. 233.
It would be unnecessary and unprofitable to analyze these
decisions or quote from the opinions rendered. We think the
following principles have been established by them and have
become settled doctrines of this court, to be acted upon wher-
ever they are applicable. Municipal corporations are political
subdivisions of the State, created as convenient agencies for
exercising such of the governmental powers of the State as
may be entrusted to them. For the purpose of executing these
powers properly and efficiently they usually are given the
power to acquire, hold, and manage personal and real property.
The number, nature and duration of the powers conferred upon
these corporations and the territory over which they shall be
exercised rests in the absolute discretion of the State. Neither
their charters, nor any law conferring governmental powers,
or vesting in them property to be used for governmental pur-
poses, or authorizing them to hold or manage such property,
or exempting them from taxation upon it, constitutes a con-
tract with the State within the meaning of the Federal Con-
stitution. The State, therefore, at its pleasure may modify
or withdraw all such powers, may take without compensation
such property, hold it itself, or vest it in other agencies, ex-
pand or contract the territorial area, unite the whole or a part

of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it.

Applying these principles to the case at bar, it follows irresistibly that this assignment of error, so far as it relates to the citizens who are plaintiffs in error, must be overruled.

It will be observed that in describing the absolute power of the State over the property of municipal corporations we have not extended it beyond the property held and used for governmental purposes. Such corporations are sometimes authorized to hold and do hold property for the same purposes that property is held by private corporations or individuals. The distinction between property owned by municipal corporations in their public and governmental capacity and that owned by them in their private capacity, though difficult to define, has been approved by many of the state courts (1 Dillon, Municipal Corporations, 4th ed., sections 66 to 66a, inclusive, and cases cited in note to 48 L. R. A. 465), and it has been held that as to the latter class of property the legislature is not omnipotent. If the distinction is recognized it suggests the question whether property of a municipal corporation owned in its private and proprietary capacity may be taken from it against its will and without compensation. Mr. Dillon

says truly that the question has never arisen directly for adjudication in this court. But it and the distinction upon which it is based has several times been noticed. *Commissioners* v. *Lucas,* 93 U. S. 108, 115; *Meriwether* v. *Garrett,* 102 U. S. 472, 518, 530; *Essex Board* v. *Skinkle,* 140 U. S. 334, 342; *New Orleans* v. *Water Works Co.,* 142 U. S. 79, 91; *Covington* v. *Kentucky,* 173 U. S. 231, 240; *Worcester* v. *Street Railway Co.,* 196 U. S. 539, 551; *Monterey* v. *Jacks,* 203 U. S. 360. Counsel for plaintiffs in error assert that the City of Allegheny was the owner of property held in its private and proprietary capacity, and insist that the effect of the proceedings under this act was to take its property without compensation and vest it in another corporation, and that thereby the city was deprived of its property without due process of law in violation of the Fourteenth Amendment. But no such question is presented by the record, and there is but a vague suggestion of facts upon which it might have been founded. In the sixth exception there is a recital of facts with a purpose of showing how the taxes of the citizens of Allegheny would be increased by annexation to Pittsburgh. In that connection it is alleged that while Pittsburgh intends to spend large sums of money in the purchase of the water plant of a private company and for the construction of an electric light plant, Allegheny "has improved its streets, established its own system of electric lighting, and established a satisfactory water supply." This is the only reference in the record to the property rights of Allegheny, and it falls far short of a statement that that city holds any property in its private and proprietary capacity. Nor was there any allegation that Allegheny had been deprived of its property without due process of law. The only allegation of this kind is that the taxpayers, plaintiffs in error, were deprived of their property without due process of law because of the increased taxation which would result from the annexation—an entirely different proposition. Nor is the situation varied by the fact that, in the Superior Court, Allegheny was "permitted to intervene and become one of the appellants."

The city made no new allegations and raised no new questions, but was content to rest upon the record as it was made up. Moreover, no question of the effect of the act upon private property rights of the City of Allegheny was considered in the opinions in the state courts or suggested by assignment of errors in this court. The question is entirely outside of the record and has no connection with any question which is raised in the record. For these reasons we are without jurisdiction to consider it, *Dewey* v. *Des Moines,* 173 U. S. 193; *Harding* v. *Illinois,* 196 U. S. 78, and neither express nor intimate any opinion upon it.

The judgment is

*Affirmed.*