## CARLSTADT NATIONAL BANK, RESPONDENT, v. BOROUGH OF LITTLE FERRY, APPELLANT.

Argued March 15, 1915—Decided June 14, 1915.

1. Chapter 106 of the laws of 1911 imposes liability to pay for the cost of drainage incurred under color of an unconstitutional statute upon the municipalities in which the drained district lies, in proportion to the taxable ratables. *Held*, that the courts could not hold the act unconstitutional because the method of apportionment is unjust and inequitable.
2. Chapter 106 of the laws of 1911 is in form and effect a general law applicable to all cases where proceedings to drain had been taken and expense incurred under the unconstitutional act of 1903, and is not limited in its effect by proceedings had in particular municipalities.
3. Chapter 106 of the laws of 1911 does not provide for a special assessment for benefits but for taxation for a public improvement, and the apportionment among the municipalities affected according to taxable ratables is within the power of the legislature.

On appeal from the Supreme Court.

For the respondent, *Robert H. McCarter* (*Luce & Kipp* on the brief).

For Little Ferry, *Peter W. Stagg.*

For the borough of Wood Ridge, *George L. Record (John M. Bell* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   Since the decision of *Rader* v. *Township of Union,* 39 *N. J. L.* 509; *affirmed,* 41 *Id.* 617, there has been no question of the power of the legislature to fix an obligation to pay for services rendered to a public agency in an enterprise which is beneficial to a particular municipality, upon the municipality itself.   *O'Neill* v. *Hoboken,* 72 *Id.* 67.   The basis upon which the power of the legislature was rested in the Rader case is the somewhat broader one of a moral obligation.   The ultimate basis is the control necessarily and rightfully exercised by the legislature over the contracts and property of subordinate public agencies.   Illustrations of the extent of this power are to be found in numerous cases collected in 28 *Cyc.* 307, 310.   The power has been vindicated by many decisions of the United States Supreme Court.   We need refer only to two of the more recent. *Hunter* v. *Pittsburgh,* 207 *U. S.* 161; *City of Chicago* v. *Sturges,* 222 *Id.* 313.   In the latter case the court sustained a statute of Illinois which imposed upon cities liability to the owners of property damaged by mobs and riots, regardless of fault on the part of the city authorities, and further held that cities were not deprived of the equal protection of the law because a similar obligation was not imposed upon municipalities of lower grade, and liability for damage to property therein was imposed upon the county.   A statute imposing liability without fault goes farther than our cases which, thus far at least, have required a moral obligation on the part of the municipality.   We need not in this case go beyond our own decisions.

The act of 1911 (chapter 106) imposes liability to pay for the cost of drainage incurred under color of an unconstitutional statute upon the municipalities in which the drained district lies, in proportion to the taxable ratables.   Every

municipality coming within the act is, or may be presumed by the legislature to be, benefited to some extent by the work done, either by the reclamation of wet ground or general benefit to the public health. The extent of that benefit and the method of distributing the expense are for the legislature to determine. We know of no constitutional requirement that makes it necessary that the expense should be apportioned among the municipalities in proportion to benefits. Such a requirement would conflict with the recognized rights of control by the legislature over its subordinate public agencies. It is argued by counsel for Wood Ridge that we should hold the act of 1911 unconstitutional because the method of apportionment is unjust and inequitable. Such an argument might properly be addressed to us if we were merely reviewing a municipal ordinance, but it is not applicable to an act of the legislature. Such an act we must obey unless we can put our finger upon some specific constitutional provision that is violated. None is pointed out. We are bound to act on the assumption that an act of the legislature is just and equitable, and it is not permissible for us to question the decision of the legislature in this case that every municipality in which the drained district lies should contribute to the expense in proportion to the taxable ratables. It is no more open to the courts to inquire into the question whether, in fact, the municipalities benefited in that proportion or benefited at all, than it would be in the case of a wealthy but childless taxpayer to inquire whether he was benefited by our public schools to an extent commensurate with his school tax. We think the act was constitutional and that the evidence offered to prove that the defendant municipality was not benefited was properly overruled.

The question as to the construction of the act involves different considerations. The unjust or inequitable results of a particular construction of a statute may well be urged to show that such could not have been the intent of the legislature. The argument for the defendants rests on two grounds—*first,* that the act of 1911 can apply only to municipalities that had notice of the proposed improvement or were

included in the original proceedings, and *second,* that so small a portion of the defendant borough was included within the drained district that the legislature could not have meant that its share of the cost should be apportioned according to the taxable ratables of the entire borough.

The act of 1911 is, in form and effect, a general law applicable to all cases where proceedings to drain had been taken and expense incurred under the unconstitutional act of 1903. Neither by its title nor in its body does it refer to the particular proceedings had in Lodi and Hasbrouck Heights. It cannot, therefore, be limited in its effect by proceedings had in those municipalities. The legislature was not bound to require notice to be given to the municipalities; it was only bound to give such a title to the act as would express the object to be accomplished, and individuals or municipalities who might by reason of existing facts come within the purview of that title were bound to take notice. The title of the act of 1911 does not become deceptive because the certificates issued in this particular case and the proceedings under the act of 1903 referred only to Hasbrouck Heights and Lodi, since the title indicates that the certificates for the payment of which the legislature meant to provide were any certificates issued under the act of 1903 for the payment of the costs of any drainage undertaken under the provisions of that act. This was sufficient to apprise anyone within a drainage area which had been drained under the act of 1903 that his interests might be affected thereby. The act of 1911 was no more tied to or limited by proceedings under the act of 1903 than the act involved in the Rader case was tied or restricted by the fact that the improvement, which the whole township was thereby required to pay for, had been taken ostensibly and in fact only for the benefit of a single road district. The objection to the act upon the ground that the amount to be paid by Little Ferry and Wood Ridge is out of proportion to the benefit is equally untenable. The case is not one of special assessment for benefits. It is a case of taxation to pay for a public improvement apportioned according to ability to pay. An individual taxpayer would not be

heard to say that his tax was out of proportion to the benefits he received; much more is this true as to municipalities, subject as they are to legislative control. That the cost of a public improvement affecting more than one municipality may be imposed by the legislature upon all that are affected, is well settled. The cases of Rader v. Township of Union and O'Neill v. Hoboken are sufficient authority. The apportionment of the expense according to taxable ratables is but the ordinary method.

The judgment must be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, JJ. 14.

*For reversal*—None.