SLIP OPINION

Cite as 2017 Ark. 95

# SUPREME COURT OF ARKANSAS

No. CV–16–840

| | |
|---|---|
| GEORGE PRITCHETT, RUSSELL SKALLERUP, AND BRUCE MITCHELL **APPELLANTS** | Opinion Delivered: March 16, 2017 |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV-2016-161-I] |
| V. | |
| CITY OF HOT SPRINGS, ARKANSAS **APPELLEE** | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

The City of Hot Springs passed an ordinance annexing property under Arkansas Code Annotated section 14-40-501 (Supp. 2015). Certain property owners sued the City, arguing that the statutory scheme authorizing the annexation was unconstitutional. The property owners also argued that even if the statute were constitutional, the annexed area did not fall within the statutory language. The circuit court dismissed the lawsuit, and the property owners have now filed this appeal. We affirm.

The Hot Springs City Board of Directors voted to annex two tracts of property in January 2016. The tracts were completely surrounded by the Hot Springs city limits and Lake Hamilton. One month later, George Pritchett and other landowners filed a complaint to set aside the annexation. Upon the City's motion for summary judgment and declaratory judgment, the circuit court dismissed Pritchett's complaint with prejudice. The court concluded that the statute was constitutional and that the annexed area met the requirements

SLIP OPINION

set forth in section 14-40-501. Pritchett has now brought this appeal, which we affirm for the reasons explained below.

First, Pritchett argues that property owners have a constitutional right to vote on annexation and that the City cannot annex unincorporated areas via ordinance alone. We reject this argument. The circuit court ruled that there is no constitutional right to vote on annexation. Pritchett argues that this ruling is too broad. He also argues that once the right to vote on annexation has been granted, it cannot be taken away without a compelling state interest. To the extent that this appeal raises a question of constitutional interpretation, we review the issue de novo. *See Vankirk v. State*, 2011 Ark. 428, 385 S.W.3d 144.

The relevant case on point is from the United States Supreme Court. *See Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907). There, the residents of the smaller city of Allegheny challenged its annexation by the larger city of Pittsburgh. The Court rejected the challenge, and in so doing noted that states have no constitutional restraints to regulate municipal corporations as they see fit:

> Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. . . . The State, therefore, at its pleasure, may modify or withdraw all such powers . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. *All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest.* In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.

*Id*. at 178–79 (emphasis added).

SLIP OPINION

Pritchett acknowledges *Hunter* by citation but fails to grapple with its consequences. Plainly, a state may enlarge a municipality "with or without the consent of the citizens." *Id.* at 179. This necessarily means that citizens have no constitutional right to vote on annexation.

Pritchett still maintains that the Equal Protection Clause of the Fourteenth Amendment provides that once a state has given citizens the right to vote on annexation, it cannot take that right away without a compelling state interest. We acknowledge that some statutes provide for annexation by election. *E.g.*, Ark. Code Ann. § 14-40-303 (Repl. 2013). But Pritchett has not provided a single citation to support his argument that once the right to vote on annexation has been given it cannot be taken away. "When the appellant does not cite any authority, nor make a convincing legal argument, and where it is not apparent without further research that the point is well taken, we will affirm." *City of Greenbrier v. Roberts*, 354 Ark. 591, 594, 127 S.W.3d 454, 456 (2003).

Regardless, because no fundamental right is at stake here, the State is not required to prove a compelling state interest. *See Jegley v. Picado*, 349 Ark. 600, 632, 80 S.W.3d 332, 350 (2002) ("When a statute infringes upon a fundamental right, it cannot survive unless a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out the state interest."). Nor does Pritchett claim that the statute creates any suspect classifications. Thus, the applicable standard is rational-basis review. *Arnold v. State*, 2011 Ark. 395, at 8, 384 S.W.3d 488, 495 (noting that rational-basis review applies unless the "statute impinges on a fundamental right or is based on a suspect

criterion"). Pritchett has not asserted that the statute lacks a rational-basis. We accordingly

affirm the circuit court on this point.

Pritchett argues next that the two tracts annexed by the City fall outside the

procedure set forth in Arkansas Code Annotated section 14-40-501. We reject this

argument too, applying well-settled principles of statutory interpretation. The statute

provides the following:

> (a)(1)(A)(i) Whenever the incorporated limits of a municipality have completely surrounded an unincorporated area, the governing body of the municipality may propose an ordinance calling for the annexation of the land surrounded by the municipality.

> (ii) Subdivision (a)(1)(A)(i) of this section includes situations in which the incorporated limits of a municipality have surrounded an unincorporated area on only three (3) sides because the fourth side is a boundary line with another state, a military base, a state park, a national forest, a lake, or a river.

Ark. Code Ann. § 14-40-501. Pritchett argues that the annexed area, known as "Area B,"

is surrounded on *two* sides by the City and on *two* sides by Lake Hamilton. Therefore, he

argues, it cannot be annexed under this statute, which requires that the land be surrounded

on *three* sides by a city and on *one* side by a lake. This is a map of the disputed area:

SLIP OPINION

SLIP OPINION



In order to resolve this issue, we must employ the rules of statutory construction. The basic rule of statutory construction is to give effect to the intent of the legislature. *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95 (2009). When the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We review issues involving statutory interpretation de novo on appeal. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766.

SLIP OPINION

We affirm the circuit court's ruling that "Area B" may be annexed under the procedure set forth in section 14-40-501. The key word is "includes" from subsection (ii). "The word 'includes' is usually a term of enlargement, and not of limitation. . . . It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated." 2A Norman J. Singer & J.D. Sambie Singer, *Sutherland Statutory Construction* § 47.7, at 305 (7th ed. 2007) (citing *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968)). Thus, a presumption exists that "include" is nonexclusive: "The verb *to include* introduces examples, not an exhaustive list." Antonin Scalia & Bryan A. Garner, *Reading Law: An Interpretation of Legal Texts*, 132–33 (2012); *see also Highway & City Freight Drivers, Dockmen & Helpers, Local Union No. 600 v. Gordon Transports, Inc.*, 576 F.2d 1285, 1289 (8th Cir. 1978) ("When a statute [uses the word includes], the fact that the statute does not specifically mention a particular entity . . . does not imply that the entity falls outside of the definition."); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996) ("The use of the word "includes" . . . does not indicate exclusion of unlisted items, but rather indicates inclusion of listed ones.").

Essentially, subsection (ii) provides an example of unincorporated areas that are "completely surrounded" by a municipality. As explained above, the rules of statutory construction provide that this single example from subsection (ii)—an area surrounded on three sides by a city and on one side by a non–city entity—does not exhaust the list of areas "completely surrounded" by a municipality. It is clear by the description of the example in subsection (ii) that the legislature's use of "completely surrounded" was not intended to limit the tract to those areas in which a city surrounds the tract. Other areas may still qualify.

This is true here, where the area to be annexed does not have four distinct sides. We hold that the phrase "completely surrounded" as used in section 14-40-501(a) includes the area at issue in this case, which has no borders other than those with a single municipality and a lake. Accordingly, we affirm the circuit court's summary-judgment order.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority essentially holds that the City of Hot Springs (City) did not violate the Equal Protection Clause of the Fourteenth Amendment by its unilateral annexation of the unincorporated area. The majority, however, misapprehends the argument that George Pritchett and the other landowners (Pritchett) made in support of that proposition. Further, the majority's analysis does not take into consideration the United States Supreme Court case cited by Pritchett— as well as other cases in this same line—in support of his claim. Rather, the majority relies on *Hunter v. Pittsburgh*, 207 U.S. 161 (1907), which is factually distinguishable and does not address the argument raised by Pritchett. Further, I take issue with the majority's interpretation of the annexation statute. Thus, I respectfully dissent.

At issue in this case is the application of Arkansas Code Annotated section 14-40-501 (Supp. 2015), which provides in part as follows:

> (a)(1)(A)(i) Whenever the incorporated limits of a municipality have completely surrounded an unincorporated area, the governing body of the municipality may propose an ordinance calling for the annexation of the land surrounded by the municipality.

> (ii) Subdivision (a)(1)(A)(i) of this section includes situations in which the incorporated limits of a municipality have surrounded an unincorporated area

on only three (3) sides because the fourth side is a boundary line with another state, a military base, a state park, a national forest, a lake, or a river.

It is important to understand the thrust of Pritchett's argument. In his brief, Pritchett observes that the "citizens annexed [did not] have a voice in electing the officials who ultimately decided the fate of their property interests." Rather, the "City Board of Directors were elected by citizens of Hot Springs" and not by the residents in the annexed area. Pritchett observes that he and the other landowners "had no voice in electing the very decision makers who decided on their property rights." In support of his argument, Pritchett cites *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964), which states,

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.

Thus, the tenor of Pritchett's argument is that a municipal legislative body on which he has no representative has unilaterally annexed the unincorporated area in which he resides, in violation of his right to equal protection under the Fourteenth Amendment.

*Wesberry* is a case in a series of cases that address issues involving equal representation in government. In a case decided in the same term as *Wesberry*, the United States Supreme Court stated that "*Wesberry* clearly established that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State." *Reynolds v. Sims*, 377 U.S. 533, 560–61 (1964). The Court further stated,

> Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. As long as ours is a representative

form of government, and our legislatures are those instruments of government elected directly by and directly representative of the people, the right to elect legislators in a free and unimpaired fashion is a bedrock of our political system. It could hardly be gainsaid that a constitutional claim had been asserted by an allegation that certain otherwise qualified voters had been entirely prohibited from voting for members of their state legislature.

*Reynolds*, 377 U.S. at 562.

Here, Pritchett argues that a municipal legislative body, on which he has no voice, has unilaterally annexed his property. "Weighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable." *Id.* at 563 (internal cite omitted). The Court concluded,

> Since the achieving of fair and effective representation for all citizens is concededly the basic aim of legislative apportionment, we conclude that the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators. Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race, or economic status.

*Id.* at 565–66 (internal citations omitted). In another case, the Court has further stated, "We . . . see little difference, in terms of the application of the Equal Protection Clause and of the principles of *Reynolds v. Sims*, between the exercise of state power through legislatures and its exercise by elected officials in the cities, towns, and counties." *Avery v. Midland Cty.*, 390 U.S. 474, 481 (1968).

The City's governing body was elected and represents the voters in that municipality. It did not derive any of its authority from the residents of the unincorporated area that it unilaterally chose to annex. While the interests of the City's residents have been protected during the annexation process, the interests of residents in the unincorporated area have not been protected. Thus, the governing body has denied the right to representation to those

SLIP OPINION

who will become the City's newest residents. Their actions cannot withstand an equal–protection challenge. *See* Dustin Cammack, Comment, *Municipal Manifest Destiny: Constitutionality of Unilateral Municipal Annexations*, 2013 BYU L. Rev. 619 (2013). Moreover, when there is an impingement on fundamental right, such as the right to vote, we must undertake a strict-scrutiny analysis, and that impingement must be the least restrictive method available. *McDaniel v. Spencer*, 2015 Ark. 94, at 24, 457 S.W.3d 641, 657 (Hart, J., dissenting). Here, the City could incorporate the area by granting the residents in the unincorporated area the right to vote. Ark. Code Ann. § 14-40-303 (Repl. 2013). Thus, unilateral annexation by a municipality is not the least restrictive method available.

Further, in its analysis the majority relies on *Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907). That case is inapposite. *Hunter* did not involve the unilateral annexation of unincorporated land by a municipality but instead the annexation of one city by another. Importantly, and in direct contrast to the case at bar, the residents in the annexed area could cast votes on the proposed annexation. Thus, there was no issue related to the denial of the right to vote. *Hunter* simply did not address the issue raised here by Pritchett, so the majority's reliance on the case is unhelpful.

As a final matter, I disagree with the majority's interpretation of section 14-40-501(a)(1)(A). The majority notes that section 14-40-501(a)(1)(A)(i) permits annexation whenever the incorporated limits of a municipality have "completely surrounded" an unincorporated area. The majority then notes that subsection (ii) provides that it "includes situations in which the incorporated limits of a municipality have surrounded an unincorporated area on only three (3) sides because the fourth side is a boundary line with

. . . a lake." The majority then asserts that, because the General Assembly used the word "includes" in subsection (ii), there is a presumption that the list is nonexclusive. The majority holds that the list must also include an unincorporated area bordered by a municipality and a lake.

I note, however, that the word "includes" does not introduce a list here. Rather, it provides the single exception to the general rule that the unincorporated area must be completely surrounded by the municipality. The majority's analysis treats as surplusage the general rule that the municipality must completely surround the unincorporated area; the exception swallows the rule. The proper statutory canon of construction to apply here is *expressio unius est exclusio alterius*, or the expression of one thing implies the exclusion of others. Antonin Scalia & Bryan A. Garner, *Reading Law: An Interpretation of Legal Texts*, 107 (2012). Moreover, to interpret the statute as the majority has would render subsection (i) of no consequence and would violate a canon of statutory construction that rejects the notion that a court can render statutory language mere surplusage. *Id*. at 174. We must not rewrite statutory language by subtracting words that we deem unwise or adding words that we deem necessary. Accordingly, this court should instead conclude that the scenario described in subsection (ii) does not also include the situation before us, and thus the City cannot annex the unincorporated area.

*Benjamin D. Hooten*, for appellant.

*Brian W. Albright*, City Attorney; and *Mark R. Hayes* and *John L. Wilkerson*, for appellee.