Josephine Linker Hart, Justice, dissenting. The majority essentially holds that the City of Hot Springs (City) did not violate the Equal Protection Clause of the Fourteenth Amendment by its unilateral annexation of the unincorporated area. The majority, however, misapprehends the argument that George Pritchett and the other landowners (Pritchett) made in support of that proposition. Further, the majority’s analysis does not take into consideration the United States Supreme Court case cited by Pritchett—as well as other cases in this same line—in support of his claim. Rather, the majority relies on Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed, 151 (1907), which is factually distinguishable and does not address the argument x-aised by Pritchett. Further, I take issue with the majority’s interpretation of the annexation statute. Thus, I respectfully dissent. At issue in this case is the application of Arkansas Code Annotated section 14-40-501 (Supp. 2015), which provides in part as follows: (a)(1)(A)© Whenever the incorporated limits of a municipality have completely surrounded an unincoi'porated area, the governing body of the municipality may propose an ordinance calling for the annexation of the land surrounded by the municipality. (ii) Subdivision (a)(1)(A)© of this section includes situations in which the incorporated limits of a municipality have sui'rounded an unincorporated area |8on only three (3) sides because the fourth side is a boundary line with another state, a military base, a state park, a national forest, a lake, or a river. It is important to understand the thrust of Pritchett’s argument. In his brief, Pritchett obseiwes that the “citizens annexed [did not] have a voice in electing the officials who ultimately decided the fate of their property interests.” Rather, the “City Board of Directors were elected by citizens of Hot Springs” and not by the residents in the annexed area. Pritchett observes that he and the other landowners “had no voice in electing the very decision makers who decided on their property rights.” In support of his argument, Pritchett cites Wesberry ¶. Sanders, 376 U.S. 1, 17-18, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), which states, No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right. Thus, the tenor of Pritchett’s argument is that a municipal legislative body on which he has no representative has unilaterally annexed the unincorporated area in which he resides, in violation of his right to equal protection under the Fourteenth Amendment. Wesberry is a case in a series of cases that address issues involving equal representation in government. In a case decided in the same term as Wesberry, the United States Supreme Court stated that “Wesberry clearly established that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State.” Reynolds v. Sims, 377 U.S. 533, 560-61, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Court further stated, Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. As long as ours is a representative | sform of government, and our legislatures are those instruments of government elected directly by and directly representative of the people, the right to elect legislators in a free and unimpaired fashion is a bedrock of our political system. It could hardly be gainsaid that a constitutional claim had been asserted by an allegation that certain otherwise qualified voters had been entirely prohibited from voting for members of their state legislature. Reynolds, 377 U.S. at 562, 84 S.Ct. 1362. Here, Pritchett argues that a municipal legislative body, on which he has no voice, has unilaterally annexed his property. “Weighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable.” Id. at 563, 84 S.Ct. 1362 (internal cite omitted). The Court concluded, Since the achieving of fair and effective representation for all citizens is con-cededly the basic aim of legislative apportionment, we conclude that the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators. Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race, or economic status. Id. at 565-66, 84 S.Ct. 1362 (internal citations omitted). In another case, the Court has further stated, ‘We ... see little difference, in terms of the application of the Equal Protection Clause and of the principles of Reynolds v. Sims, between the exercise of state power through legislatures and its exercise by elected officials in the cities, towns, and counties.” Avery v. Midland Cty., 390 U.S. 474, 481, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). The City’s governing body was elected and represents the voters in that municipality. It did not derive any of its authority from the residents of the unincorporated area that it unilaterally chose to annex. While the interests of the City’s residents have been protected during the annexation process, the interests of residents in the unincorporated area have not been protected. Thus, the governing body has denied the right to representation to those |inwho will become the City’s newest residents. Their actions cannot withstand an equal-protection challenge. See Dustin Cammack, Comment, Municipal Manifest Destiny: Constitutionality of Unilateral Municipal Annexations, 2013 BYU L. Rev. 619 (2013). Moreover, when there is an impingement on fundamental right, such as the right to vote, we must undertake a strict-scrutiny analysis, and that impingement must be the least restrictive method available. McDaniel v. Spencer, 2015 Ark. 94, at 24, 457 S.W.3d 641, 657 (Hart, J., dissenting). Here, the City could incorporate the area by granting the residents in the unincorporated area the right to vote. Ark. Code Ann. § 14-40-303 (Repl. 2013). Thus, unilateral annexation by a municipality is not the least restrictive method available. Further, in its analysis the majority relies on Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). That case is inapposite. Hunter did not involve the unilateral annexation of unincorporated land by a municipality but instead the annexation of one city by another. Importantly, and in direct contrast to the case at bar, the residents in the annexed area could cast votes on the proposed annexation. Thus, there was no issue related to the denial of the right to vote. Hunter simply did not address the issue raised here by Pritchett, so the majority’s reliance on the case is unhelpful. As a final matter, I disagree with the majority’s interpretation of section 14-40-501(a)(1)(A). The majority notes that section 14-40-501(a)(1)(A)(i) permits annexation whenever the incorporated limits of a municipality have “completely surrounded” an unincorporated area. The majority then notes that subsection (ii) provides that it “includes situations in which the incorporated limits of a municipality have surrounded an unincorporated area on only three (3) sides because the fourth side is a boundary line with | n... a lake.” The majority then asserts that, because the General Assembly used the word “includes” in subsection (ii), there is a presumption that the list is nonexclusive. The majority holds that the list must also include an unincorporated area bordered by a municipality and a lake. I note, however, that the word “includes” does not introduce a list here. Rather, it provides the single exception to the general rule that the unincorporated area must be completely surrounded by the municipality. The majority’s analysis treats as surplusage the general rule that the municipality must completely surround the unincorporated area; the exception swallows the rule. The proper statutory canon of construction to apply here is ex-pressio unius est exclusio alterius, or the expression of one thing implies the exclusion of others. Antonin Scalia & Bryan A. Garner, Reading Law: An Interpretation of Legal Texts, 107 (2012). Moreover, to interpret the statute as the majority has would render subsection (i) of no consequence and would violate a canon of statutory construction that rejects the notion that a court can render statutory language mere surplusage. Id. at 174, 28 S.Ct. 40. We must not rewrite statutory language by subtracting words that we deem unwise or adding words that we deem necessary. Accordingly, this court should instead conclude that the scenario described in subsection (ii) does not also include the situation before us, and thus the City cannot annex the unincorporated area.