Jake **SHERMAN**, Plaintiff,

v.

**CITY OF PASADENA et al.,**
**Defendants.**

No. 71–1943–F.

United States District Court,
C. D. California.

Dec. 4, 1973.

Levy, Van Bourg & Hackler, Los Angeles, Cal., for plaintiff.

Wendell R. Thompson, City Atty., James O. Kahan, Deputy City Atty., Pasadena, Cal., Richard R. Terzian, Burke, Williams & Sorensen, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

The court dismisses this action by a former city employee who seeks reinstatement of his employment for the reason that the termination of his employment was not "under color of law" as contemplated by the Civil Rights Act, 42 U.S.C. § 1983.

Plaintiff alleges the following basic facts:

1. The City of Pasadena is a municipal corporation governed by a charter.

2. The City Manager under the charter has the power to appoint, promote, discipline and terminate all city employees in accordance with a personnel system created pursuant to the charter.

3. The charter requires the City Manager to establish a manual of the rules, practices and procedures necessary to the administration of the city personnel system.

4. The City Manager has adopted an Administrative Policy and Procedure Manual.

5. Plaintiff began employment with the City as an associate engineer-electrical in the City's Water and Power Department on September 4, 1969.

6. On April 20, 1971 the General Manager of the Water and Power Department summoned plaintiff into his office and informed him that he was being terminated for inefficiency, antagonism and poor judgment. Termination was effected on May 4, 1971.

7. The procedure by which plaintiff was terminated violated certain provisions of the Administrative Policy and Procedure Manual in that:

(a) Plaintiff was not given the right to have witnesses present at the meeting during which he was terminated.

(b) He was not given a bill of particulars setting forth the specific acts and omissions underlying the termination.

(c) He was not informed of his appeal rights.

(d) Only the City Manager may terminate employment and not the General Manager of the Department.

8. On July 28, 1971 plaintiff was served with a bill of particulars, and in December of 1971, a three-day hearing was held before a Review Board. The proceedings were transcribed by a certified reporter.

9. The Review Board recommended that plaintiff be restored to his employment with the City.

10. On January 21, 1972 the City Manager informed plaintiff, contrary to the recommendation of the Review Board, of his decision to sustain the discharge of the plaintiff.

11. At no time prior to that decision did the City Manager review or consider the transcript of the hearing before the Review Board.

Plaintiff claims that the defendants in terminating him in violation of the provisions of the Administrative Manual have deprived him of due process within the meaning of the Fifth and Fourteenth Amendments. Plaintiff has specifically stated that he does not contend that his termination of employment was because of any reason occasioned by reason of race, religion or sex, or that he was being terminated in punishment for his assertion of any constitutional right such as the First Amendment.

His sole claim is that the provisions of the Administrative Manual were not complied with, and therefore he has been deprived of due process of law. The issue to be determined is whether the termination of employment of the plaintiff under the facts alleged constituted acts done "under color of law" pursuant to 42 U.S.C. § 1983.

42 U.S.C. § 1983, which was passed as § 1 of the Ku Klux Klan Act of April 20, 1871, reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The court holds that § 1983 does not apply to officials of a non-federal governmental unit when they act in a proprietary and not a governmental capacity, and hence does not afford a basis of relief for plaintiff's claim of misapplication of Pasadena's personnel procedures. When a city acts as an employer it is functioning in a proprietary capacity, and, absent specific legislation to the contrary, the employer-employee relationship cannot be treated any differently than it is in the private sphere.

As the Supreme Court noted in Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961),

". . . consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

There, the function of running a cafeteria in a naval weapons plant was characterized as that of a "proprietor." *Id.*, at 896, 81 S.Ct. 1743. Moreover, the reasons for the dismissal of a short-order cook in that case were "entirely rational and in accord with the contract. . . ." *Id.*, at 898, 81 S.Ct. at 1750.

The distinction between acts that are proprietary and acts that are governmental is a well-founded one. In general, governmental powers are those that pertain to a function that is traditionally exercised by a sovereign, such as the use of the police power, protection of the citizenry, the care of the poor or the infirm, and the education of the young. A government's acts become proprietary when they are those normal-

ly done by private persons,[1] and the determination is a question of law for the court. Barrett v. San Jose, 161 Cal. App.2d 40, 42, 325 P.2d 1026 (1958). See also Hunter v. Pittsburgh, 207 U.S. 161, 179, 28 S.Ct. 40, 52 L.Ed. 151 (1907). The pure act of employment is proprietary; when any government unit hires a work force and assumes an employer-employee relationship—including the discharge of those employees with whom it is dissatisfied—it is no different than any other entity in the management-labor context. This equality was implicitly recognized by Congress when it amended Title VII of the Civil Rights Act of 1964 with the Equal Employment Opportunity Act of 1972, deleting the exemption of state and local governments as employers.

The legislative history of § 1983 reveals that the Ku Klux Klan Act was passed in response to a situation of lawlessness and upheaval in the South following the Civil War, a crisis referred to by President Grant in a message to Congress on March 28, 1871 and members of both houses during the debates.[2] It is clear that the major concern of Congress was to provide protection and redress for citizens from domestic violence when the states could not or would not do so, or when, through the complicity of authorities, the state was itself involved.[3] The debates are replete with allegations and counters about whether the state governments in the South during Reconstruction were performing their essential functions, notably the

protection of the citizenry. Other alleged shortcomings included the lack of independent grand juries[4] and the failure to provide mail service.[5]

■ The 42nd Congress was concerned with the misfeasance or nonfeasance of traditional governmental functions, the services each unit must provide to protect the health, safety and welfare of the people. The remedy provided—§ 1983—was a broad one, and has been used since its passage in a variety of ways to correct oppression by the government—acting *as a government*. The attempt of the plaintiff to expand § 1983 even further here today must fail however. The proprietary acts of the City of Pasadena and its officers as an employer are in no way analogous to the governmental functions which were the concern of the legislators who passed the statute and are not acts "under color of law" as contemplated by § 1983.

This refusal to extend the statute to pure employer-employee affairs is not an unprecedented one. More particularly, the Second Circuit has twice recently grappled with the concept of dismissals allegedly "under color of law." In Simard v. Bd. of Ed. of the Town of Groton, 473 F.2d 988 (2nd Cir. 1973), a non-tenured teacher in the public school system brought suit for injunctive relief when his contract was not renewed. The court there found it unnecessary to decide the dispute as to whether the interests asserted rose to the level of "liberty" or "property" as guaranteed by

---

1. For instance, the operation of public utilities such as Pasadena's Department of Water and Power has been held a proprietary capacity. Larsen v. San Francisco, 152 Cal. App.2d 355, 313 P.2d 959 (1957); Logan v. City of Glendale, 132 Cal.App. 169, 22 P.2d 552 (1933); South Pasadena v. Pasadena Land and Water Company, 152 Cal. 579, 93 P. 490 (1908).

   None of this is meant to assert that there is not the sufficient "state action" present to legislate and regulate a government's proprietary acts. In the opinion of this court, however, a mere finding of legislatable state action is not, of itself, dispositive of a § 1983 action.

2. 42 Cong. Globe 244 and *passim*, 42nd Cong., 1st Sess. (1871). *See generally* Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1492 (1968).

3. *See for example*, 42 Cong. Globe at Appendix pp. 71–72 (remarks of Rep. Blair of Mich., March 30, 1871).

4. *Id.* at Appendix p. 129 (remarks of Sen. Pool of North Carolina, April 3, 1871).

5. *Id.* at 662, (remarks of Sen. Vickers of Maryland, April 13, 1871).

the Fourteenth Amendment, since even assuming due process guarantees applied, the allegations of wrong-doing were *de minimis.* Judge Feinberg did, however, point up an essential distinguishing characteristic in that lawsuit: where the dismissed employee contends that termination is the result of an attempt to assert a First Amendment right, a § 1983 claim might take on more weight. 473 F.2d at 922 and n. 6. The district court in *Simard* had decided that there was not a factual basis for a claim that the dismissal was in retaliation for the teacher's exercise of his right to free speech, and the appellate court held this finding was supported by the record. Here, plaintiff's complaint does not allege a retaliatory motive in the dismissal, nor does plaintiff contend that the termination was an attempt to discriminate against him or to penalize him for exercising a right guaranteed under the Constitution.[6]

The Second Circuit, on another occasion, approached the problem in a manner even more analogous to that suggested by the court here. In Lefcourt v. Legal Aid Society, 445 F.2d 1150 (2nd Cir. 1971), a lawyer who had been dismissed by the Legal Aid Society in New York City brought suit under § 1983. The Society was funded under contract with the City and other government agencies, and through private contributions, and functioned to supply legal assistance to persons unable to secure counsel. Judge Moore first dismissed the plaintiff's First Amendment contentions as "diaphanous," noting that a "veil of freedom of speech . . . did not preclude the Society from concluding on the basis of Lefcourt's views that he was unable or unwilling to implement various policies of the Society," *id.* at 1153. *See also* the concurring opinion of Judge Waterman at 1157. The court then went on to point out that the Legal Aid Society, in providing a service

"normally performed for and by private persons," was not acting under color of state law for purposes of § 1983.

"[T]he hiring and firing practices of the Society as they relate to this case do not involve the manner in which the Society carries on its public function." *Id.,* at 1156–1157.

\* \* \* \* \* \*

"[T]hat would not necessarily mean that State action would be involved in the hiring and firing practices of the Society any more than it would have been in the hiring and firing of the private corporations involved in *Marsh* [Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265] and *Logan Valley* [Amalgamated Food Employees Union Local No. 590, v. Logan Valley Plaza, 391 U.S. 308, 88 S. Ct. 1601, 20 L.Ed.2d 603]." *Id.,* at 1156, n. 8.

The analysis that emerges from these cases is one which has gone unarticulated, but remains sound. Absent an allegation of some "plus factor"—that the dismissal is in retaliation for or in contravention of a constitutionally guaranteed right or privilege—the solitary charge of an undeserved or improper dismissal from employment by a local governmental unit is merely a labor relations case, an action taken in the proprietary sense and not "under color of law" as intended by § 1983. As was noted above, the court does not regard this as the case of an official acting in his *governmental* capacity. Neither is this a case in which the government or an official attempts to penalize a citizen for asserting or exercising a right guaranteed to him by the Constitution. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) or Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Such a penalization is difficult to reconcile conceptually with the governmental/proprietary distinction already

---

6. Compare the allegations that a dismissal was based upon the exercise of constitutionally protected speech in Phillips v. Kennedy, No. 72–1118 (arguments reported at 42 U. S.L.W. 3281), a case involving the removal of a nonprobationary federal employee, now pending before the Supreme Court.

referred to and should instead be looked at as a category all its own—a government neither functioning nor misfunctioning, but rather taking affirmative steps to interfere with privileges or immunities, without regard to the governmental or proprietary sphere. Our system places the burden of alleging such penalization on the complaining citizen, however.

This case is also to be distinguished from the situation in which a private party acts together with state officials in a governmental function under color of law, United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (law enforcement officials and private citizens acting together to "punish"), or one in which state official acts with a private party in a proprietary function when affirmative interference with a protected right or privilege is alleged, Adickes v. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969) (policeman aiding segregated lunch counter in refusing to serve a white woman in company of several blacks).

The distinction the court has drawn is entirely consistent with the Equal Employment Opportunity Act of 1972, Pub. L. 92–261, 42 U.S.C. § 2000e et seq. and its legislative history. That act extended the authority of Title VII of the Civil Rights Act of 1964 to include state and local governments as "employers," thereby eliminating an exemption which had existed under the old law.

First, the amendment offered by Congress would seem to be an implicit recognition that a government, as an employer, should be treated no differently than any private employer—*because they are performing the same functions.* Second, the statements in the legislative history that the new definition of "employer" was not meant to supplant, but rather provide an alternative to, the remedy available under § 1983 also point out the true nature of § 1983 relief. No allegations sufficient to constitute a cause of action under Title VII are present here. The amended complaint does not contend that the termination was on account of race, creed, color, religion or national origin. The same missing elements destroy the "alternate" § 1983 claim. There is no allegation that the defendant has misperformed a purely governmental function, and likewise there is no contention that the employment dismissal was an attempt by the city or its officials to penalize a citizen for exercising a guaranteed right or privilege. In the governmental context, those acting under color of law need only misperform to give rise to a § 1983 action; in the proprietary context, more must be alleged.

Plaintiff does not allege jurisdiction based upon diversity of citizenship (28 U.S.C. § 1332) and his remedy lies in the courts of the State of California for breach of contract, or otherwise, as his cause of action does not rise to a federally protected right.

It is therefore ordered that the action be dismissed.