Otis CAMPBELL, David Squires, Herman R. Waschka, Ted Burhenn, Mary Burhenn, Edward B. Denechaud, Northshore, Ltd. Partnership, a Louisiana Partnership in Commendam

v.

SALES TAX DISTRICT #3 OF ST. TAMMANY PARISH, St. Tammany Parish, St. Tammany Police Jury, Floyd D. Glass, Herman Sharp, James Thompson, Wil Griffin, Ogise Richardson, Gary Singletary, C.J. Dunaway, Barry Bagert, Martha Houston, Elizabeth Teague, Stanford Owen, Anthony Alfred, Jerry Schwehm.

Sidney W. LASSEN

v.

Salvatore A. CARUSO, Joe Martinez, Alvin Singletary, Lionel G. Washington, Robert Callahan, R.B. Van Sandt, L.P. Barthelemy, Warren L. Berault, Phil Salvaggio, Pearl A. Williams, the City of Slidell, Elizabeth Teague, Floyd D. Glass, Wil Griffin, Ogise Richardson, Gary Singletary, Jerry Schwehm, Barry Bagert, Martha Houston, Earl D. Broom, Stanford Owen, Anthony Alfred, C.J. Dunaway, Herman Sharp, St. Tammany Parish, James Thompson.

Civ. A. Nos. 87–0256, 87–4143.

United States District Court, E.D. Louisiana.

Nov. 16, 1987.

Elaine W. Guillot, Patrick J. Berrigan, Deutsch, Kerrigan & Stiles, Slidell, La., Normand F. Pizza, Alicia Reggie, Broadhurst, Brook, Mangham & Hardy, New Orleans, La., for all plaintiffs in 87–0256.

Betty F. Mullin, Mitchell W. Herzog, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, La., for Sidney W. Lassen.

Jerry Kenneth Schwehm, Slidell, La., pro se.

Michael R. Fontham, Denise M. Pilie', Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., Julian J. Rodrigue, Covington, La., for all defendants in 87–0256.

Lane Carson, Covington, La., for Parish of St. Tammany in 87–4143.

Bradley C. Myers, Pamela Crawford Keller, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, La., for S. Caruso, J. Martinez, A. Singletary, L. Washington, R. Callahan, R. Van Sandt, L. Barthelemy, W. Berault, P. Salvaggio, P. Williams and City of Slidell in 87–4143.

Christopher Moody, Hammond, La., for St. Tammany Parish Police Jury, E. Teague, F. Glass, J. Thompson, W. Griffin, O. Richardson, G. Singletary, J. Schwehm, B. Bagert, M. Houston, E. Broom, S. Owen, A. Alfred, C. Dunaway, H. Sharp, J. Martinez, A. Singletary, L. Washington, R. Callahan, B. Van Sandt, L. Barthelemy, W. Berault and P. Salvaggio.

## SUPERSEDING AND AMENDING ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court upon motion of defendants in these consolidated cases to dismiss plaintiffs' complaints or alternatively to stay pending the outcome of state court litigation. Also pending before the Court is plaintiff Lassen's motion to reconsider consolidation of these cases. For the following reasons, the motions to dismiss are granted and the motions to stay and to reconsider consolidation are hereby dismissed as moot.

These consolidated cases arise out of the creation of a sales tax district in St. Tammany Parish and the associated levy of a two percent sales and use tax within that district, which tax was approved by voters on November 4, 1986 and levied by the Police Jury on November 20, 1986. The Campbell plaintiffs, residents and non-residents of the municipality of Slidell, request injunctive relief restraining and prohibiting the defendant Parish and Police Jury officials from issuing and selling sales tax revenue bonds. The Campbell plaintiffs further request declaratory judgment that Sales Tax District # 3 was invalidly created and that Ordinance 86–664, creating the Sales Tax District pursuant to LSA–R.S. § 33:2721.6, was adopted in such a manner as to deny plaintiffs due process of law and equal protection under the law in violation of the Federal and Louisiana Constitutions and federal and state law.

Lassen seeks recovery of damages[1] invoking the Federal Constitution, the Federal Declaratory Judgment Act, and the Constitution and laws of Louisiana, including Louisiana Civil Code Article 2315. Lassen alleges the creation of the Sales Tax District, levy of the sales tax and the annexation of certain property owned by him into Sales Tax District # 3 constitute an inverse condemnation or taking of his property, for which he is entitled to compensation exceeding twelve million dollars. He further alleges that the disparate impact of the tax on him and similarly situated property owners denies him equal protection of the law, because he will be subjected to a cumulative sales and use tax rate of ten percent whereas others would be subjected to a maximum cumulative sales and use tax rate of eight percent. He has requested a trial by jury on all counts.

Plaintiffs invoke the jurisdiction of this Court under 28 U.S.C. §§ 1331,[2] 1343,[3] and

---

1. On oral motion at the hearing on the motions to dismiss, later confirmed by written motion, Lassen withdrew his demand for declaratory relief. *See California v. Grace Brethren Church,* 457 U.S. 393, 408–09, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93, 106–07 (1982) (request for declaratory relief falls within purview of Tax Injunction Act).

2. 28 U.S.C.A. § 1331 provides in pertinent part:
   § 1331. *Federal question*

(a) The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
(West Supp.1987)

3. 28 U.S.C. § 1343 provides in pertinent part:
   § 1343. *Civil rights and elective franchise*
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ... (3) To redress the deprivation, under color of any

42 U.S.C. § 1983,[4] and the fourteenth amendment of the United States Constitution. It is also asserted that the Court has pendent jurisdiction over the state law claims.

As to both consolidated cases, the Court concludes that it is deprived of jurisdiction by the Federal Tax Injunction Act, 28 U.S.C. § 1341, and that it should decline in any event to exercise its jurisdiction based upon principles of abstention. In addition, as to the Lassen suit, the Court concludes the annexation of his property is a purely political matter over which this Court should not exercise jurisdiction. Accordingly, the motions to stay are dismissed as moot, although *Pullman* and *Burford*-type abstention would require this Court to stay the exercise of its jurisdiction over these matters until related issues are resolved by pending state litigation.

## I.

### TAX INJUNCTION ACT

The Tax Injunction Act provides in pertinent part as follows:

> The district court shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

■ The actions of St. Tammany Parish and Police Jury officials clearly culminate in the imposition of a "tax under State law," as defined by the Act. *See Tramel v. Schrader*, 505 F.2d 1310 (5th Cir.1975) (special streets improvement assessment held a tax under the Act); *Schneider Transport,*

*Inc. v. Cattanach*, 657 F.2d 128 (7th Cir. 1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982) (license fee held to be a tax under Wisconsin law). *See also Alnoa G. Corp. v. City of Houston*, 563 F.2d 769 (5th Cir.1977), *cert. denied*, 435 U.S. 970, 98 S.Ct. 1610–11, 56 L.Ed.2d 62 (1978) (special city assessment for street paving passed in accordance with Texas state statutes held valid tax).

Moreover, there is available to plaintiffs in these cases a "plain, speedy and efficient remedy" in state court, so as to permit application of the Tax Injunction Act. A "plain, speedy and efficient remedy" is one which meets "certain minimal procedural criteria", including a "full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections to the tax." *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512–15, 101 S.Ct. 1221, 1229–30, 67 L.Ed.2d 464 (1981). In *Rosewell*, the Court found a remedy to be "plain" where there was no "uncertainty" surrounding the state court remedy. *Id.* at 517, 101 S.Ct. at 1231. The remedy was "speedy" where an approximate two year delay was anticipated. *Id.* at 522, 101 S.Ct. at 1233. And the remedy was "efficient" where it did not impose an "unusual hardship on [the taxpayer] requiring ineffectual activity or an unnecessary expenditure of time or energy." *Id.* at 519, 101 S.Ct. at 1231 (Court discussing authorities wherein travel across state line or a multiplicity of suits not considered to be inefficient).

■ In the Campbell and Lassen cases, there is no suggestion of an absence of plain, speedy and efficient remedies within the meaning of the Act. In fact, the

State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

4. 42 U.S.C. § 1983 provides in pertinent part: § 1983. *Civil action for deprivation of rights* Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Campbell complaint also invokes 42 U.S. C. § 1973c, which statute provides for a three judge panel in certain circumstances. This request was previously dismissed as moot by Minute Entry of April 27, 1987.

Campbell plaintiffs have already unsuccessfully litigated the validity of the tax in state court, which litigation is presently pending on appeal. Lassen has not availed himself of state remedies, but this does not require a finding that state remedies are inadequate. *See Stephens v. Portal Boats Co.*, 781 F.2d 481 (5th Cir.1986).

■ Thus, to the extent plaintiffs in this matter seek injunctive relief, this Court is clearly without jurisdiction to grant injunctive relief. This Court is also bound by Fifth Circuit authority applying the Tax Injunction Act to claims for damages. The Fifth Circuit has observed that a suit for damages based upon the alleged tortious enforcement of an unconstitutional tax "would have many of the same detrimental effects that actions for tax refund, declaratory, or injunctive relief would have." *A. Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir.1980). Thus, Lassen's complaint for damages, coupled with his invocation of Louisiana tort law and specifically Civil Code article 2315, brings the Lassen complaint squarely within the Fifth Circuit's decision.

The Court finds distinguishable *First English Evangelical Lutheran Church v. County of Los Angeles*, — U.S. —, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), wherein the Supreme Court held that the just compensation clause of the Constitution required the government to pay for a "temporary" regulatory taking. The First English Evangelical Lutheran Church challenged the effect of a land use ordinance creating an interim flood protection area where plaintiff's property was located. The ordinance became effective immediately because of public health and safety concerns and had not been held invalid prior to plaintiff's suit for damages. However, the Court determined that "a taking of all use of property" had occurred, and the government was liable for compensation.

By contrast, the Lassen case presents not an inverse condemnation as plaintiff claims but an exercise of a government's power to tax.[5] The Lassen complaint parades a series of problems associated with financing and competitive disadvantage, but a fair reading of the complaint does not disclose any allegation, similar to that made in *First English Evangelical Lutheran Church*, that the plaintiff was deprived of all use of the property. Thus, two caveats of the Supreme Court in *First English* are relevant. First, the *First English* Court treated as true for the purposes of its decision the allegation that the ordinance in question denied the plaintiff all use of its property. 107 S.Ct. at 2389. There is no similar allegation in the Lassen case. Second, the Supreme Court expressly limited its holding to the facts presented, thereby limiting the precedential value of the case when land use planning regulations are evaluated and *a fortiori* limiting the precedential value of the case in other contexts, such as this one.

The Court also finds distinguishable from the Campbell and Lassen suits cases in which challenges to disbursements of funds raised by taxes were held outside the purview of the Tax Injunction Act. *See, e.g., Hoohuli v. Ariyoshi*, 741 F.2d 1169 (9th Cir.1984) (suit to enjoin state revenue spending); *Levy v. Parker*, 346 F.Supp. 897 (E.D.La.1972), *aff'd*, 411 U.S. 978, 93 S.Ct. 2266, 36 L.Ed.2d 955 (1973) (without opinion). By contrast, the allegations of the Campbell and Lassen suits challenge how the tax was enacted, whether the tax may be legally collected and the disparate impact of the tax collection. In addition, this

---

**5.** The term "inverse condemnation" has been used in the context of land use planning regulations. In *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, the Supreme Court elaborated:

The phrase "inverse condemnation" appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted. As de-

fined by one land use planning expert, "[i]nverse condemnation is '*a cause of action against a governmental defendant* to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" D. Hagman, Urban Planning and Land Development Control Law 328 (1971) (emphasis added).

Court finds wholly inapplicable *Appling County v. Municipal Elec. Authority,* 621 F.2d 1301 (5th Cir.1981), wherein plaintiffs, including the County of Appling, Georgia, sought to *enforce* collection of an ad valorem tax, not to limit or obviate the tax, as is here attempted.

For the foregoing reasons, this Court does not have subject matter jurisdiction over the complaints.

## II.

### ABSTENTION

■ Even if these federal actions were not barred by the Tax Injunction Act, this Court would abstain from decision on grounds of comity, the *Pullman* doctrine and *Burford*-type abstention. *See generally,* Wright, Law of Federal Courts §§ 52 & 52A.

A damages action brought under 42 U.S. C. § 1983 to address allegedly unconstitutional administration of a state tax system is barred by principles of comity. *See Fair Assessment in Real Estate Assn. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). The *McNary* Court ruled that taxpayers "must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete." 454 U.S. at 117, 102 S.Ct. at 186. The Court further found that the availability of state court remedies was not at issue because the district court expressly found the plaintiffs had means to rectify what they considered an unjust situation through the state's processes. *Id.* The Court also emphasized that the reasons supporting federal non-interference with state taxation were compelling. *See also First Nat'l Bank v. Bd. of*

*Comm'rs,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924) (Cited by *McNary;* holding a litigant must fully exhaust administrative remedies before challenging alleged overassessment of taxes).[6]

The *Pullman* doctrine also supports abstention. It applies where state action is challenged in federal court as contrary to the Federal Constitution and there are dispositive questions of state law. *See* Wright, *supra,* § 52 at p. 218 (citing *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). As explained in *High Ol' Times, Inc. v. Busbee,* 621 F.2d 135, 139 (5th Cir.1980):

> *Pullman* establishes three factors for the district court to consider in deciding whether or not to abstain: (1) whether the disposition of a question of state law involved in the case can eliminate or narrow the scope of the federal constitutional issue; (2) whether the state law question presents difficult, obscure, or unclear issues of state law; and (3) whether a federal decision could later conflict with subsequent state court resolutions concerning the same regulatory program or scheme, thus engendering more confusion.

These factors support abstention in this case.

*Burford*-type abstention appears appropriate, as these claims request unwarranted intrusion into purely local concerns. *See* Wright, *supra,* § 52, pp. 522–23 (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959) (federal court should not interfere in

6. Justice Rehnquist, writing for the majority in *McNary,* did not reach the issue whether the Tax Injunction Act, standing alone, required dismissal of the federal case, because principles of comity alone barred federal courts from granting monetary relief. In support of this proposition, he cited *Rosewell v. LaSalle Nat'l Bank, supra,* to the effect that even where the Tax Injunction Act would not bar federal court interference in state tax administration, principles of federal equity may nevertheless counsel withholding relief. *See* 454 U.S. at 108, n. 4, 102 S.Ct. at 181, n. 4. In a concurring opinion,

Justice Brennan was joined by three other Justices, opining that principles of comity are not a source of judicial power to renounce jurisdiction. 454 U.S. at 120, 102 S.Ct. at 188. Thus, Justice Brennan proceeded to address the applicability of the Tax Injunction Act, concluding that a federal forum may be appropriate where a complaint has sought only a remedy in damages if a plaintiff is able to show a violation of the Federal Constitution. *Id.* at 128–29, 102 S.Ct. at 192. However, Justice Brennan concluded dismissal was appropriate because plaintiffs failed to exhaust administrative remedies.

administration of affairs of state political subdivision)).

In sum, regardless of the approach taken, dismissal of the complaints is appropriate.

### III.

### ANNEXATION AS A POLITICAL QUESTION

Dismissal also appears appropriate because annexation of property by a city or town is purely a state political matter entirely within the power of the state legislature to regulate. *See Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). *See also Baldwin v. City of Winston–Salem,* 710 F.2d 132 (4th Cir. 1983) (annexation subject to scrutiny where motivated by racially discriminatory intent). The Fifth Circuit affirmed a trial court's reliance on *Hunter,* where the plaintiff challenged annexation of property into the City of Corpus Christi as a violation of the fourteenth amendment and further urged that collection of city taxes should be enjoined. *See Hammonds v. City of Corpus Christi,* 343 F.2d 162 (5th Cir.1965).

For the foregoing reasons, the plaintiffs' complaints are DISMISSED and the Clerk of Court is directed to enter judgment dismissing plaintiffs' complaints for lack of subject matter jurisdiction, with plaintiffs to bear all costs.