# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRE R. JORDAN; CYNTHIA J.
JORDAN,

Plaintiffs-Appellants,

v.

TOWN OF MORNINGSIDE, MD,
Defendant-Appellee.

No. 01-1615

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-00-3082-PJM)

Argued: January 22, 2002

Decided: March 1, 2002

Before WILLIAMS and KING, Circuit Judges, and
Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Isaac Henry Marks, O'MALLEY, MILES, NYLEN &
GILMORE, P.A., Calverton, Maryland, for Appellants. Kevin Bock
Karpinski, ALLEN, JOHNSON, ALEXANDER & KARP, Baltimore,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Andre and Cynthia Jordan (the Jordans) appeal from the district court's dismissal of their 42 U.S.C.A. § 1983 action for failure to state a claim. Because we agree that the Jordans failed to allege a cognizable claim under § 1983, we affirm.

I.

The Jordans live on McKeldin Drive in Suitland, Maryland. On or about November 30, 1999, the Town of Morningside, Maryland approved a resolution to annex McKeldin Drive and several neighboring areas. The resolution became effective on January 14, 2000. After approving the annexation, Morningside caused Prince George's County, Maryland to assess and collect real property taxes from the Jordans in the amount of $773.00 for the July 1, 2000 to June 30, 2001 tax year. On September 22, 2000, the Jordans filed this action pursuant to § 1983 in the Circuit Court for Prince George's County, Maryland against Morningside, alleging various violations of state law, as well as violations of the First and Fourteenth Amendments, arising out of the purportedly unlawful annexation.[1]

The Jordans claim that in approving the annexation, Morningside violated Maryland's statutory scheme for annexation. Article 23A, § 19 of the Maryland Code provides in relevant part as follows:

> (a)  *Legislative body authorized to enlarge corporate boundaries.* — The legislative body, by whatever name known, of every municipal corporation in this State may enlarge its corporate boundaries as provided

---

[1]On October 26, 2000, the Jordans amended their complaint to include a Fifth Amendment due process claim.

in this subheading; but this power shall apply only to land:

. . . .

(b) *Initiation by legislative body.* — (1) The proposal for change may be initiated by resolution regularly introduced into the legislative body of the municipal corporation, in accordance with the usual requirements and practices applicable to its legislative enactments, and also in conformity with the several requirements contained in subsections (b) and (c) of § 13 of this subtitle, but only after the legislative body has obtained the consent for the proposal from not less than 25 percent of the persons who reside in the area to be annexed and who are registered as voters in county elections and from the owners of not less than 25 percent of the assessed valuation of the real property located in the area to be annexed.

. . . .

(f) *Petition for referendum by residents of area to be annexed.* — At any time within the 45 day period following the final enactment of the resolution, a number of persons equal to not less than 20 percent of the persons who reside in the area to be annexed and who are registered as voters in county elections in the precinct or precincts in which the territory to be annexed is located may, in writing, petition the chief executive and administrative officer of the municipal corporation for a referendum on the resolution. Upon the presentation of a petition to the officer, he shall cause to be made a verification of the signatures thereon and shall ascertain that the persons signing the petition represent at least 20 percent of the persons who reside in the area to be annexed and who are registered as voters in county elections in the precinct or precincts in which the territory to be annexed is located. Upon verifying that the requirements of this subsection have been

> complied with, the officer shall by proclamation sus-
> pend the effectiveness of the resolution, contingent
> upon the results of the referendum.

Md. Code Ann. 1957, Art. 23A, § 19 (Miche 1998). The Jordans contend that Morningside failed to obtain the signatures required to annex their property, thus violating § 19(b)(1). The Jordans further contend that Morningside violated § 19(f) by failing to initiate a referendum after they presented a petition containing the signatures of 20% of the persons residing in the area to be annexed. These violations, the Jordans argue, resulted in an unlawful annexation, creating unlawful tax liability.

After removing the case to the United States District Court for the District of Maryland, Morningside filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Morningside's motion and dismissed the Jordans' § 1983 claim with prejudice. The Jordans filed a motion to alter or amend the district court's order to provide for a remand to the state court of the Jordans' state law claims, which the district court denied. On April 19, 2001, the Jordans filed a notice of appeal to this court, appealing only the district court's dismissal of their Fourteenth Amendment due process claim.[2] On appeal, the Jordans contend that Morningside's failure to abide by § 19 and the resultant unlawful tax increase violated due process, a claim that they argue is cognizable pursuant to § 1983.

## II.

We review the grant of a motion to dismiss de novo. *See Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). "In reviewing a 12(b)(6) dismissal, we construe factual allegations in the nonmoving party's favor, treating them as true, and we will affirm a dismissal for failure to state a claim only if it appears that the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claim." *Id.*

---

[2]The Jordans have disavowed any intent to appeal the district court's dismissal of their First or Fifth Amendment claims. (Appellant's Br. at 5 n.1.)

The Supreme Court has made clear that our review of municipal annexation decisions under the Fourteenth Amendment is tightly circumscribed, recognizing that the state is vested with the exclusive power to make annexation decisions and that the state's exercise of that power generally does not give rise to federal constitutional claims. *Hunter v. Pittsburgh*, 207 U.S. 161, 178-79 (1907); *see also Baldwin v. Winston-Salem*, 710 F.2d 132, 135 (4th Cir. 1983) ("[T]he creation and redrawing of the political subdivisions of a state, unlike the exercise of power by those subdivisions, are peculiarly matters involving state political concerns."); *Campbell v. Sales Tax District No. 3 of St. Tammany Parish*, 673 F. Supp. 790, 796 (E.D. La. 1987), *aff'd without opinion*, 864 F.2d 789 (5th Cir. 1988) ("[A]nnexation by a city or town is purely a state political matter, entirely within the power of the state legislature to regulate."). In applying *Hunter*, we have identified two situations that support a Fourteenth Amendment claim: (1) where the annexation decision infringes upon fundamental rights; or (2) where the annexation decision creates suspect classifications. *Baldwin*, 710 F.2d at 135.

The Jordans argue that their case fits within the former, contending that the arbitrary and capricious imposition of taxes incident to an unlawful annexation deprives the Jordans of their fundamental right to due process. This argument, however, is foreclosed by *Baldwin*, wherein we held, "there is no right under the Fourteenth Amendment to challenge annexation decisions alleged merely to be arbitrary and capricious." *Id.* at 135 n.3. We further noted, "[n]or is there any fundamental right to be free of additional state taxation" resulting from such alleged arbitrary and capricious annexation decisions. *Id.* at 135. Likewise, in *Hunter*, the Supreme Court rejected challenges to an annexation decision by taxpayers, stating, "[a]lthough the inhabitants and property owners may . . . suffer inconvenience, and their property may be lessened in value by the burden of increased taxation . . . there is nothing in the Federal Constitution which protects them from these injurious consequences." *Hunter*, 207 U.S. at 179. The Jordans attempt to distinguish *Baldwin* and *Hunter*, but their proffered distinctions lack merit. *See Berry v. Bourne*, 588 F.2d 422, 424 (4th Cir. 1978) ("[*Hunter*] has been held to foreclose attacks on a state [annexation] procedure specifically on either due process or equal protection grounds."). Indeed, were we to accept the Jordans' argument, we would be required to review nearly every annexation decision pursu-

ant to the Fourteenth Amendment, a result that explicitly was prohibited by the Supreme Court in *Hunter* and by this court in *Baldwin*.

Because federal review of the Jordans' Fourteenth Amendment claim is foreclosed by *Hunter* and *Baldwin*, the district court properly dismissed the Jordans' § 1983 action with prejudice. Although no federal cause of action exists for the alleged violations of Maryland's annexation scheme, we note that the Jordans may seek redress in state court for the alleged violations of state law.[3]

*AFFIRMED*

---

[3]The Jordans' complaint stated that the suit was brought pursuant to 42 U.S.C.A. § 1983. (J.A. at 44.) Section 1983 is a mechanism to redress violations of federal law, not state law. *White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997) (rejecting argument that state statutes create rights enforceable through § 1983). Accordingly, Morningside concedes that the dismissal of the Jordans' § 1983 action in no way affects their ability to bring a subsequent suit in state court for the alleged violations of state law.