DLD-217                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1130
_____

CARL EDWARD BELL,
                                              Appellant

v.

SUPERINTENDENT BENNER TOWNSHIP SCI;
STEWART BOONE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:22-cv-01383)
District Judge:  Honorable Christopher C. Conner

_____

Submitted on Appellant's Motions to Reopen and Proceed In Forma Pauperis,
and for Possible Dismissal for Jurisdiction Defect,
Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B), or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6

September 18, 2025
Before:  RESTREPO, FREEMAN, and NYGAARD, Circuit Judges

(Opinion filed: September 26, 2025)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Carl Edward Bell brought suit under 42 U.S.C. § 1983 against Morris Houser, the Superintendent at Benner Township SCI, and Stewart Boone, the mailroom supervisor at the prison. In his amended complaint, Bell claimed that his rights under the First, Fifth, and Fourteenth Amendments had been violated when his stimulus check was confiscated and he faced retaliation for grieving the issue.[1]

The defendants filed a motion to dismiss Bell's complaint. The District Court granted it in part, dismissing all but Bell's Fourteenth Amendment due process claim against Boone. On December 4, 2024, the District Court, issuing a memorandum and a separate order on the docket, granted Boone's motion for summary judgment on that remaining claim. Bell filed a timely notice of appeal.[2]

---

[1] More specifically, he alleged that his aunt had received his stimulus check and forwarded it to the prison after he had received assurances that the money would be placed into his prison account if she sent the check. See ECF No. 13 at 6-9. However, after she mailed the check, the amount was not added to his account, and no one in the accounts department responded to his questions. Id. at 9. He further claimed that after he filed a grievance, he began experiencing problems accessing the law library. Id. at 10. Houser, in affirming the denial of relief on Bell's grievance, stated that there was no evidence that the prison had received the check. See ECF No. 13-1 at 16. Eventually, the IRS notified Bell that his stimulus check had been returned to the agency. See Id. at 30. Bell filed another grievance, which was denied with the explanation that checks signed by a family member get sent back but without acknowledgment that "the check was mailed to the institution or received by the institution." Id. at 34. Houser upheld that denial while providing a form to help Bell find his refund check. Id. at 37. Bell contends that after he filed his later grievance, the "the defendants [sic] mailing department" has retaliated against him by interfering with his incoming and outgoing mail. ECF No. 13 at 14.

[2] Although Bell's notice of appeal was not docketed until January 22, 2025, when it was received, he has provided evidence that he delivered it to prison officials for mailing on or before January 3, 2025. See 3d Cir. Doc. No. 6 at 6-8; see also ECF No. 60 at 2. Accordingly, Bell, who is entitled to the benefit of the prison mailbox rule because he is a

Because Bell did not pay the filing and docketing fees or file an application to proceed in forma pauperis ("IFP"), the Clerk entered an order dismissing this appeal for failure to prosecute. Bell subsequently filed a motion to reopen this appeal, with an explanation why he could not provide the required IFP documents previously, as well as a motion to proceed IFP. We grant his motion to reopen, see 3d Cir. L.A.R. Misc. 107.2(a), and his IFP application, Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976).

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We exercise plenary review. See St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299 (3d Cir. 2020); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Upon review, we will summarily affirm the District Court's judgment because no substantial issue is presented on appeal. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

As the District Court concluded, Bell could not pursue his Fifth Amendment claim against the defendants, who are state officials at Benner Township SCI, not federal actors. See Hunter v. City of Pittsburgh, 207 U.S. 161, 176 (1907); Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54-55 (3d Cir. 1983).

Additionally, Bell did not allege, as he must to bring his First Amendment claim, that the defendants were personally involved in retaliating against him. See Jutrowski v.

---

prisoner, timely filed his notice of appeal within 30 days of the entry of the District Court's order, which complied with the separate judgment rule. See Fed. R. App. P. 4(a)(1)(A); Fed R. Civ. P. 58(a); Houston v. Lack, 487 U.S. 266, 276 (1988); Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 84 n.2 (3d Cir. 2013); United States v. Rinaldi, 447 F.3d 192, 194 n.6 (3d Cir. 2006).

Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). Allegations of personal involvement are allegations of personal direction or of actual knowledge and acquiescence. See Dooley v. Wetzel, 957 F.3d 366, 374 (2020) (citation and quotation marks omitted). Bell assigned liability to Houser and Boone because others under their supervision allegedly interfered with his law library access and ability to send and receive mail. See, e.g., ECF No. 13 at 14 (blaming their mail department). But liability cannot be predicated on respondeat superior alone. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). He also described Houser's role in denying his appeals in the grievance process, but that, too, is insufficient to show personal involvement in the purported retaliatory acts. See Dooley, 957 F.3d at 374.

As for the Fourteenth Amendment due process claim, the record on summary judgment revealed that Bell's stimulus check ultimately made its way into his prison account, albeit after a detour back to the IRS and a delay of several months.[3] Accordingly, we agree with the District Court that Bell did not suffer the deprivation of a property (or liberty) interest that implicated his right to due process. See Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (explaining that the due process rights guaranteed by the Fourteenth Amendment attach when a person is deprived of property); see also Murray v.

---

[3] We agree with the District Court that there is no evidence that the return to the IRS was in bad faith. Among other things, on one of the grievance forms that Bell submitted to the prison and provided to the District Court, he noted that his aunt had signed the check. ECF No. 13-1 at 39. Elsewhere (and after his aunt had forwarded the check), a prison official notified him that checks signed by a family member get sent back. Id. at 34.

Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("We . . . may affirm the District Court's judgment on any basis supported by the record.")

Bell does not dispute that he eventually received the check, but he has asserted that the delay nonetheless worked a deprivation on him. He has explained that the absence of the funds in his account plus his expenses for copies and legal filings put him in the red, which limited his ability to buy commissary items and make phone calls. And he argues in support of his appeal that the District Court overlooked Sandin v. Conner, 515 U.S. 472, 484 (1995), in concluding that due process protections did not attach because the deprivation was de minimis. Even if we assume without deciding that Bell's inability to use the funds for several months deprived him of more than a de minimis property or liberty interest, cf. Sniadach v. Fam. Fin. Corp. of Bay View, 395 U.S. 337, 342 (1969) (Harlan, J., concurring) (describing a temporary but more significant deprivation of the use of a garnished portion of wages), we conclude that Bell was not denied due process under the circumstances of his case. And that is because he had an adequate post-deprivation remedy in the prison grievance system. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that post-deprivation remedies provide sufficient due process for both negligent and intentional deprivations of property); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000) (determining that a prison grievance system was an adequate post-deprivation remedy). Sandin does not counsel a different result.

For these reasons, after reopening this appeal and granting IFP status to Bell,[4] we will affirm the District Court's judgment.

---

[4] Because Bell is a prisoner, the grant of IFP status will allow him to proceed without prepayment of the fees, but he will still be required to pay the full amount of the filing and docketing fees in installments. See 28 U.S.C. § 1915(a)(1) & (b)(1). The warden or his or her designee shall assess an initial fee of 20% of the greater of (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the notice of appeal. The warden, or his or her designee, shall calculate, collect, and forward the initial payment assessed in this order to the Clerk of the District Court for the Middle District of Pennsylvania. In each succeeding month when the amount in the prisoner's account exceeds $10, the warden, or his or her designee, shall forward payments to the Clerk of the District Court for the Middle District of the Pennsylvania equaling 20% of the preceding month's income credited to the prisoner's account until the fees are paid. Each payment shall reference the appellate docket number for this appeal. The warden, or his or her designee, shall forward payments to the appropriate courts simultaneously if there are multiple orders.